# In the United States Court of Federal Claims

No. 23-443
Filed: May 23, 2023†

---

**MYRIDDIAN, LLC,**

      *Plaintiff*,

v.

**THE UNITED STATES,**

      *Defendant.*

---

## ORDER GRANTING PRELIMINARY INJUNCTION

**TAPP, Judge.**

    This Court routinely upholds the United States' determination that an offeror is ineligible for award because the offeror did not comply with the Federal Acquisition Regulations ("FAR") requirements. *See e.g., Thalle/Nicholson Joint Venture v. United States*, 164 Fed. Cl. 224 (2023). This is integral to preserve the integrity of the procurement process. In such cases, the disappointed offeror must accept that the awardee satisfied every solicitation requirement when the disappointed offeror failed to do so. In this case, the roles are reversed; the United States must accept that the awardee failed to satisfy a solicitation requirement.

    Before the Court is Plaintiff Myriddian, LLC's ("Myriddian") Motion for a Preliminary Injunction. (Mot. for Prelim. Inj., ECF No. 21). In this post-award protest, Myriddian challenges the eligibility of the awardee, Cloud Harbor Economics, LLC ("Cloud Harbor"), for a contract with the Department of Health and Human Services, Centers for Medicare & Medicaid Services ("the Agency"). (Mem. Mot. for Prelim. Inj. ("Memo") at 2, ECF No. 22). The contract is to provide methodologies to ensure consistent coding of Medicare and Medicaid claims under the National Correct Coding Initiative ("NCCI") program. (*Id.*). Myriddian seeks to enjoin the United States from proceeding with the contract because Cloud Harbor failed to meet mandatory the requirement of Solicitation Clause FAR 52.204-7. (*Id.* at 1). As explained below, the Court grants Myriddian's Motion for Preliminary Injunction.

---

† This Order was originally filed under seal on May 10, 2023, (ECF No. 30). The Court provided parties the opportunity to review this Order for any proprietary, confidential, or other protected information and submit proposed redactions. The proposed redactions were filed on May 17, 2023, (ECF No. 31) and are accepted in-part by the Court. Thus, the sealed and public versions of this Opinion differ only to the extent of those redactions, the publication date, and this footnote.

## I. Background

The procurement at issue involves an 8(a) small business set-aside firm-fixed price contract. (Administrative Record "AR" 243–44, ECF No. 20-1).[1] The Solicitation[2] provided for a one-year base period of contract performance with three one-year option periods, a ten-month option period, and a three-month transition out period. (AR 364–65). The Solicitation stated the Agency would make a best value trade-off decision in accordance with FAR Part 15. (AR 244–45).

The Solicitation required all offerors to comply with its term and conditions to be deemed eligible for the award. (AR 622). Specifically, it provided that "[i]f an Offeror fails to meet the solicitation requirements, including the submission of applicable contract documentation, the Government will not make an award to that Offeror." (AR 622). The Solicitation also explicitly incorporated by reference FAR 52.204-7, a provision addressing System for Award Management ("SAM"). (AR 407). FAR 52.204-7(b)(1) provides that "[a]n Offeror is required to be registered in SAM when submitting an offer or quotation, and shall continue to be registered until time of award, during performance, and through final payment of any contract, basic agreement, basic ordering agreement, or blanket purchasing agreement resulting from this solicitation."

On November 21, 2022, offerors submitted their proposals. (AR 641–1534). The Agency fully evaluated a total of six proposals and determined that Cloud Harbor's proposal provided the best value trade-off and was eligible for award. (AR 1182, 1877–1907). On March 9, 2023, the Agency formalized its decision and awarded the contract to Cloud Harbor. (AR 1877–1907). Myriddian protested the decision before this Court on March 30, 2023 (ECF No. 1). Cloud Harbor has failed to intervene.

On April 27, 2023, Myriddian filed the Motion for Preliminary Injunction, (ECF Nos. 21, 22), and an Amended Complaint, (ECF No. 23). Myriddian seeks to enjoin the United States on a single basis: that Cloud Harbor was ineligible for award because it did not comply with FAR 52.204-7's mandatory SAM registration requirement. (Memo at 1). First, Myriddian argues that Cloud Harbor violated the plain and clear language of FAR 52.204-7(b)(1) because it was not continuously registered in SAM for the requisite period and that Myriddian was prejudiced by the United States' award decision because it had a "substantial chance" to receive the award. (*Id.* at 4–7). Second, Myriddian argues it will suffer insufferable harm if Cloud Harbor continues performance because it loses potential work and the opportunity to compete on a level playing field for the contract. (*Id.* at 7–8). Third, Myriddian argues such harms outweigh the United States' interest in continuing performance. (*Id.* at 8–9). Fourth, Myriddian argues that an injunction is in the public interest because it will protect the integrity of the procurement process.

---

[1] Citations to the record in this order are from the Administrative Record, (ECF No. 20-1). These citations refer to the appendix paginations within these documents as filed with the Court and do not correspond with the ECF-assigned page number on which the appendix appears. Thus, the Court will cite to the record using "(AR __)."

[2] Solicitation No. 75FCMC22R0035 (the "Solicitation" or the "RFP").

(*Id.* at 9–10). Finally, Myriddian argues that if injunctive relief is granted, no bond is warranted because "it is clear" it is entitled to an injunction. (*Id.* at 10).

In its brief Response, the United States proffers no defense to Myriddian's claim of entitlement to a preliminary injunction; instead, it merely suggests that the Court defer ruling on the Motion until it fully addresses the merits in a judgment on the administrative record. (Def.'s Resp. at 4–5, ECF No. 27). At the Motion hearing on May 4, 2023, the United States advanced two main arguments not raised in its Response: (1) the lapse in Cloud Harbor's SAM registration was immaterial under the FAR, particularly because Cloud Harbor was registered by March 9 when the Agency issued the award; and (2) Cloud Harbor's registration is distinguishable from cases where a contractor was deemed ineligible because they were not registered when proposals were submitted. (May 4, 2023, Hearing Transcript ("Tr.") 6:9–19:23, ECF No. 29). Neither argument is availing.

## II. Analysis

As an initial matter, the Court may consolidate the hearing on a motion for preliminary injunction with the trial on the merits. RCFC 65(a)(2). RCFC provides that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." *Id.* At the May 4 hearing, the United States requested the Court defer addressing the merits of the case until it could file its Response and Cross-motion for Judgement on the Administrative Record. (Tr. 4:20–5:17). The Court declines to do so. The Court further specified it would not consolidate the hearing with the trial on the merits. (Tr. 5:19–25). Accordingly, this Order addresses only the merits of the Motion for Preliminary Injunction.

To successfully obtain a preliminary injunction, the movant must establish the following factors: "(1) likelihood of success on the merits; (2) irreparable harm absent immediate relief; (3) the balance of interests weighing in favor of relief; and (4) that the injunction serves the public interest." *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018). Importantly, no one factor is dispositive; the movant must adequately show all four factors. *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). Here, Myriddian has adequately established each factor.

The movant must first establish a reasonable likelihood of success on the merits. *Somerset Pharm., Inc. v. Dudas*, 500 F.3d 1344, 1346 (Fed. Cir. 2007). In bid protests, the Court "appl[ies] the appropriate [Administrative Procedure Act ("APA")] standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). The plaintiff must demonstrate the agency's decision was likely "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004) (internal citations omitted). In other words, the protestor must show that it is likely "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009)). If the Court determines the agency's conduct fails under this standard, the Court must determine if the "bid protester was prejudiced by that conduct."

*Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). To establish prejudice, the plaintiff must establish "that there was a 'substantial chance' it would have received the contract award but for the [agency's] errors." *Id.* at 1353.

Myriddian argues that Cloud Harbor was ineligible for award because it failed to comply with FAR 52.204-7(b)(1) when its SAM registration lapsed. (Memo at 4–7). The United States does not contest that Cloud Harbor's registration lapsed but claims that the lapse does not make it ineligible for award. (*See generally* Def.'s Resp.; Tr. 6:9–19:23). This issue is resolved by resorting to the Solicitation language.

The Solicitation explicitly incorporated FAR 52.204-7. (AR 407). "When interpreting regulations, we apply the same interpretive rules we use when analyzing the language of a statute." *Boeing Co. v. Sec'y of Air Force*, 983 F.3d 1321, 1327 (Fed. Cir. 2020) (citing *Mass. Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1365 (Fed. Cir. 2015)). Therefore, the Court's analysis begins and ends with the plain and ordinary meaning of the provision. *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009); *Banknote Corp. of Am.*, 365 F.3d at 1353. The Court must, wherever possible, "giv[e] effect to the plain meaning of each word, clause or sentence." *ManTech Telecomm. & Info. Sys. Corp. v. United States*, 49 Fed. Cl. 57, 67 (2011) (internal citations omitted).

First, the Court analyzes whether FAR 52.204-7(b)(1) is mandatory. FAR 52.204-7(b)(1) provides: "An Offeror is *required* to be registered in SAM when submitting an offer or quotation, and *shall* continue to be registered . . . ." (emphasis added). When a contractor is "required to" perform a task, it imposes a compulsory constraint. *See H.B. Mac, Inc. v. United States*, 153 F.3d 1338, 1343–44 (Fed. Cir. 1998). Further, it is well-established that "shall" "generally imposes a nondiscretionary duty" and "connotes a requirement." *Supernus Pharms., Inc. v. Iancu*, 913 F.3d 1351, 1359 (Fed, Cir. 2019) (internal citations omitted). Therefore, registration in SAM is mandatory under FAR 52.204-7(b)(1).

Next the Court turns to the operative phrase in FAR 52.204-7(b)(1), "shall continue to be registered until time of award . . . ." When regulatory terms are undefined, the Court gives them their ordinary meaning. *See Nicely v. United States*, 23 F.4th 1364, 1369 (Fed. Cir. 2022) (internal citations omitted) (interpreting statutory language). Merriam-Webster defines "continue" as "to maintain without interruption a condition, course, or action." *Continue*, Merriam-Webster, https://www.merriam-webster.com/dictionary/continue (last visited May 8, 2023). It follows that an offeror's SAM registration may not have an interruption or lapse under the plain meaning of FAR 52.204-7.

This interpretation is critical because Cloud Harbor's registration lapsed from February 12 to March 1. (Memo Exs. 1–2, ECF Nos. 22-1, 22-2). This seventeen-day period fell between November 21, 2022, when Cloud Harbor submitted its proposal and March 9, 2023, when the

Government made its award decision.[3] (AR 885–993, 1877–1907). Myriddian argues the regulation "unambiguously requires that an offeror be registered in SAM when submitting an offer and that an offeror continue to be registered until the time of award." (Memo at 6). The Court agrees with Myriddian. Accordingly, Cloud Harbor violated the plain language of FAR 52.204-7 because it failed to "continue to be registered until time of award[.]"

Myriddian argues such a lapse is fatal because Cloud Harbor did not comply with a mandatory Solicitation requirement. (Memo at 2–3). Myriddian highlights the Solicitation's "Eligibility for Award" clause which provided that "[i]n order to be eligible for award, Offerors are required to comply with the terms and conditions of the solicitation . . . If an Offeror fails to meet the solicitation requirements, including the submission of applicable contract documentation, the Government will not make an award to that Offeror." (Memo at 2 (quoting AR 622)). Consequently, failure to comply with FAR 52.204-7, which was incorporated into the Solicitation, rendered Cloud Harbor ineligible for the award.[4] Regarding Cloud Harbor's ineligibility, the United States argues the lapse was not fatal because Cloud Harbor was registered when it submitted its bid and when the Agency issued the award, so the error was correctable. (Tr. 6:13–20, 7:1–8, 8:5–19). However, this is a distinction without a difference under the stark language of the FAR where offerors "shall continue to be registered until time of award[.]" FAR 52.204-7(b)(1).

It would be nonsensical to carve out an exception for FAR 52.204-7's continuity requirement. The United States fails to distinguish the harms arising from a failure to be registered in SAM when an offer is submitted or when the Agency issues an award—both of which the United States seems to believe are fatal—from the harm arising from a failure to be continuously registered as required by FAR 52.204-7(b)(1). (Tr. 7:1–8, 8:8–9:2). Likewise, the Court declines to draw a distinction based on the duration of the registration lapse. Just as the FAR does not account for any number of days delay in registration at the time an offeror submits its bid or following the agency's award decision, the FAR does not permit such unrestrained

---

[3] The timeline of Cloud Harbor's SAM registration, which the United States does not challenge, is: (1) November 21, 2022, Cloud Harbor submitted its proposal, (AR 885); (2) February 2, 2023, Cloud Harbor filed to renew its SAM registration, (Memo Ex. 2 at 1); (3) February 11, 2023, Cloud Harbor's registration in SAM expired, (Memo Ex. 1 at 1); (4) March 1, 2023, Cloud Harbor re-registered until February 2, 2024, (Memo Ex. 2 at 1); and (5) March 9, 2023, Cloud Harbor is awarded the contract, (AR 1877–1907).

[4] The Court notes that the United States has previously argued, and the Court accepted, the mandatory nature of FAR 52.204-7. *See e.g., Thalle/Richardson* 164 Fed. Cl. at 234–36 (upholding ineligibility determination because offeror not registered at time of proposal submission); *G4S Secure Integration LLC v. United States*, 161 Fed. Cl. 387, 395 (2022) (upholding ineligibility determination because joint venturers not registered at time of proposal submission); *CGS-ASP Sec., JV, LLC v. United States*, 162 Fed. Cl. 783, 816–18 (2022) (finding the current version of FAR 52.204-7 "no longer provides contracting officers with discretion" in SAM registration).

agency discretion. FAR 52.204-7. Such discretion would disqualify some offerors altogether while disregarding the avoidable blunders of others.[5]

The United States also argues that there are procedures, notably in FAR 14.405,[6] to correct "minor irregularities" in Cloud Harbor's proposal. (Tr. 14:8–16). To support its argument the United States cites *Master Pavement Line Corp.*, B-149111, 2020 CPD ¶ 404 (Comp. Gen. Dec. 16, 2020), a Government Accountability Office ("GAO") decision, where the GAO required agencies to overlook failure to register in SAM pursuant to FAR 14.405 because it was immaterial to the invitation for bids. (Tr. 14:19–15:20). This argument mistakes the law— namely because the Solicitation was a negotiated procurement subject to FAR Part 15. (AR 244– 45). FAR Part 14 is inapplicable because it only applies to sealed bidding, not negotiated procurements. *Compare* FAR 14.000, *with* FAR 15.000 ("This part prescribes policies and procedures governing competitive and noncompetitive negotiated acquisitions. A contract awarded using other than sealed bidding procedures is a negotiated contract").

Further, Myriddian argues the Agency does not have the authority to waive the registration requirement because the plain language of FAR 52.204-7(b)(1) is unambiguous. (*Id.* at 6). In support, Myriddian cites *G4S Secure Integration LLC v. United States*, where the Court determined contracting officers ("COs") lack discretion "as to when to require SAM registration" under FAR 52.204-7. No. 21-1817, 2022 WL 211023 at *5 (Fed. Cl. Jan. 24, 2022).[7] In *G4S Secure Integration LLC*, the Court analyzed the current version of FAR 52.204-7 which prohibits agency discretion regarding SAM registration and even instructs offerors to take processing time into consideration when registering in SAM.[8] 2022 WL 211023 at *5–8. The Court is persuaded by this analysis and finds that the Agency lacks discretion to waive the FAR 52.204-7 requirement.

---

[5] Nothing in this Order should be construed as imposing a requirement that an agency confirm an offeror's compliance with FAR 52.204-7. The FAR does not impose such a requirement, and the Court doubts its authority to do so. This Order merely reflects the reasoning that an agency and offerors are bound by relevant provisions of the FAR. An agency need not confirm every aspect of an offeror's eligibility, but where an agency chooses not to look, the award decision may be imperiled.

[6] FAR 14.405 addresses minor informalities or irregularities in bids. The United States does not cite to an analogous provision in FAR Part 15.

[7] Although, "the court is not bound by other decisions in the Court of Federal Claims, they are persuasive authority." *Buser v. United States*, 85 Fed. Cl. 248, 259 n.12 (2009) (citing *CNG Transmission Mgmt. VEBA v. United States*, 84 Fed. Cl. 327, 336–37 (2008)).

[8] "Processing time should be taken into consideration when registering. Offerors who are not registered in SAM should consider applying for registration immediately upon receipt of this solicitation." FAR 52.204-7(d)

Myriddian argues it was prejudiced by the Agency's error; the Court agrees and finds a likelihood of success on the merits based on this argument. "To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996). Instead, the protester must show "that there was a substantial chance it would have received the contract award but for that error." *Bannum, Inc*, 404 F.3d at 1353. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ AR 1182). Comparatively, Cloud Harbor's proposal received high confidence ratings for Factors 1 and 3, a neutral confidence rating for Factor 2, and a total price of $11,079,372.43. (AR 1182). Such rating similarities are sufficient to show that but for the Agency's error, Myriddian had a substantial chance of award. *See Bannum, Inc*, 404 F.3d at 1353. Accordingly, Myriddian has established a likelihood of success on the merits.

Regarding the second factor—immediate and irreparable injury to plaintiff and balance of hardships on all the parties—Myriddian has met its burden of proof. *See Silfab Solar, Inc*, 892 F.3d at 1345. To determine irreparable injury, the Court weighs "whether plaintiff has an adequate remedy in the absence of an injunction." *Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728, 743 (2000) (citation omitted). Myriddian persuasively shows that it has no adequate remedy at law and would lose the reasonable opportunity to compete fairly for the contract without an injunction. (Memo at 8). Repeatedly, the Court has determined that "loss of potential work and profits from a government contract constitutes irreparable harm." *E.g., Superior Optical Labs, Inc. v. United States*, 150 Fed. Cl. 681, 695 (2020) (quoting *Macaulay-Brown, Inc. v. United States*, 125 Fed. Cl. 591, 606 (2016)). The Court has also held that an offeror losing the opportunity to compete on a "level playing field" constitutes irreparable harm. *Michael Stapleton Assocs., Ltd v. United States*, 163 Fed. Cl. 297, 350–51 (2022) (collecting cases). Accordingly, the Court finds that absent injunctive relief, Myriddian will suffer irreparable harm.

Myriddian has also established that the harm it will suffer without injunctive relief outweighs the harm to the United States. When considering the balance of hardships to the parties, "the court must weigh the irreparable harm plaintiff would suffer without an injunction against the harm an injunction would inflict on defendant . . . ." *Progressive Indus., Inc. v. United States*, 129 Fed. Cl. 457, 485 (2016). The United States argues, but offers no proof, that an injunction would compound ongoing coding issues in the NCCI program, extending far beyond the CMS offices. (Tr. 22:12–23:1). Specifically, the United States argues that the contract, "impacts people who are just trying to get cancer treatments, it impacts people who are trying to get . . . life-saving surgeries and procedures." (Tr. 22:23–23:1). However, the United

States acknowledges such information is not in the record or before the Court.[9] (Tr. 23:9–14).[10] Comparatively, Myriddian raises concrete, irreparable harm discussed above. Further, the United States could mitigate its harm and issue a bridge contract if performance of the contract was enjoined. *See AGMA Sec. Serv., Inc. v. United States*, 152 Fed. Cl. 706, 728–29 (2021). Thus, the irreparable harm to Myriddian outweighs the speculative harm to the United States.

Finally, the public interest will be served by an injunction. Myriddian argues enjoining the United States from proceeding with a contract that was wrongfully awarded protects the integrity of the procurement process. (Memo at 9–10). It is undisputed that "[t]here is an overriding public interest in preserving the integrity of the procurement process by requiring the Government to follow its procurement regulations." *Bona Fide Conglomerate, Inc. v. United States*, 96 Fed. Cl. 233, 242 (2010). Thus, it is indisputably in the public interest to require the United States to comply with the terms of FAR 52.204-7, in a manner comparable to its own requirements for prospective bidders.

Regarding Myriddian's argument that no bond is warranted, under RCFC 65 the movant is required to give security when the Court issues a preliminary injunction. RCFC 65(c) specifies that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained[,]" but "[t]he United States, its officers, and its agencies are not required to give security." Myriddian argues no bond is warranted because "it is clear" it is entitled to injunctive relief. (Memo at 10; Tr. 38:10–16). However, this is impermissible under the Rule because Myriddian does not qualify for the government exception. RCFC 65(c). Therefore, the Court requires Myriddian, as movant, to post security of $405,000.[11]

---

[9] The United States suggests the AR regarding Cloud Harbor's SAM registration was incomplete, despite certifying that "to the best of [the CO's] knowledge and belief, and after careful review, the following documents constitute the record of administrative actions performed in the above-referenced solicitation that are relevant to the issues raised in the plaintiff's complaint." (AR at 1). The United States expresses a desire to supplement the record and provide an affidavit from the CO addressing the issue. (Tr. 9:24–10:19). Notably, the United States failed to supplement the AR prior to the Preliminary Injunction hearing despite a week passing between the Motion's filing and the hearing on May 4 and has yet to do so.

[10] THE COURT: "Obviously, we don't – there's no record of that [type of harm]." THE UNITED STATES: "Right."

[11] The amount of bond falls within the discretion of the trial court. *Sanofi–Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385 (Fed. Cir. 2006). In bid protests the court relies on the government's estimates of costs associated with issuing the injunction. *E.g., Bona Fide Conglomerate, Inc. v.*

### III.  Conclusion

For the stated reasons, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction, (ECF No. 21). It is hereby **ORDERED** that:

1. The United States of America, including the United States Department of Health and Human Services, its officers, agents, employees, and all other persons who are in active concert or participation with such persons are **ENJOINED** from proceeding with any contract performance connected to Solicitation No. 75FCMC22R0035, to provide support services for the NCCI program **as of the date and time of this Order** until the Court has fully resolved this bid protest.

2. Pursuant to RCFC 65(c), the Court **ORDERS** that Myriddian give security in the amount of $405,000 to properly pay the costs and damages sustained should the Court later find that a party has been wrongfully enjoined.

3. The Court **ORDERS** the parties to proceed with the current briefing schedule.

4. The Court **ORDERS** the parties to meet and confer and file a Joint Status Report proposing redactions to this Order by **May 17, 2023**.

**IT IS SO ORDERED**.

s/      David A. Tapp<br>DAVID A. TAPP, Judge

---

*United States*, 96 Fed. Cl. at 243. At the May 4 hearing, the United States conceded it had not discussed the issue with the Agency and did not provide any estimate of potential costs. (Tr. 19:24–20:17). Comparatively, Myriddian made a "quick calculation" that "given it's a five-year contract give or take with option years" and its proposal was for ▮▮▮▮▮▮, its performance would cost the Government approximately ▮▮▮▮▮▮ per day. (Tr. 37:8–14). Here, the Court exercises its discretion and adopts Myriddian's method of calculating an amount. It would cost the Government approximately ▮▮▮ per day for that performance. The Court believes it is fair to calculate the costs associated with issuing the injunction for ▮▮▮▮▮▮; therefore, the amount of bond Myriddian must provide is $405,000.